LILLIE B. MAHER et al.

v.

ELLA L. ALDRICH et al.

*Opinion filed October 26, 1903—Rehearing denied December 8, 1903.*

1. TRUSTS—*Statute of Frauds does not apply to parol trust in personal property.* A trust in personal property may be created by parol, and the beneficiaries of the fund may follow it in all forms of investment it may assume.

2. SAME—*effect where the cash is substituted for stock set aside in trust.* If certain stock in a corporation is set aside by the owner in order to devote the income to a particular trust, the fact that he afterwards substitutes cash for the stock, which proved worthless, and directs its investment in real estate, does not defeat the trust and enable the trustee to claim the land freed from trust obligations.

3. LIMITATIONS—*when statute begins to run against recovery of trust fund.* The Statute of Limitations does not begin to run, so as to bar the recovery of a trust fund, until disavowal of the trust by the trustee.

4. PARTIES—*when donor is not a necessary party to trust litigation.* Neither the donor of a trust fund, nor his heirs or personal representatives in case of his death, are necessary parties to litigation respecting the ownership of rents and profits arising from such fund, where no relief is sought as to them.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This was a bill in equity filed by Elizabeth Stevens and Ella L. Aldrich, against Lillie B. Maher and others, to enforce an alleged trust in favor of the complainants in the income from certain real estate situated in the city of Chicago, herein referred to as the "Lake avenue property;" in the proceeds of the sale of certain other real estate located in the city of Chicago, herein referred to as the "Oakwood boulevard property;" and in the income from certain real estate located in the city of Boston, herein referred to as the "St. Botolph street property," and for an accounting as to the rents and profits of the said properties, which were alleged to be held in trust

by Lillie B. Maher for the benefit of the complainants and said Lillie B. Maher during their natural lives and during the natural life of the survivor of them.

The bill of complaint, as amended, alleged that in the summer of 1883, at the farm of one Benjamin Sumner, at Woodstock, Connecticut, where the complainant Elizabeth Stevens and the defendant Lillie B. Maher (then Lillie B. Stevens) resided, and where the complainant Ella L. Aldrich and one Sybil Aldrich, since deceased, were visiting, one William S. King, who was also at said farm, proposed to make provision for the above mentioned women for their lives, by transferring to said Lillie B. Maher, in trust for their joint lives or the life of the survivor of them, shares of stock in the American Paper Barrel Company, then owned by him, or the proceeds thereof, to the value of $30,000; that immediately thereafter said William S. King carried his said purpose into effect, and transferred $30,000 worth of stock of said company to Lillie B. Maher in trust for the use of said Elizabeth Stevens, Ella L. Aldrich, Sybil Aldrich and Lillie B. Maher for their natural lives or the life of the survivor of them; that subsequently said stock was sold by King, and the proceeds, amounting to $30,000, were turned over to said Lillie B. Maher and were held by her upon the same trusts; that in the spring of 1885 the Oakwood boulevard property was purchased for the sum of $8000, with the consent of said Elizabeth Stevens, Ella L. Aldrich, Sybil Aldrich and Lillie B. Maher, with the advice and consent of William S. King, and paid for by Lillie B. Maher out of the proceeds of said stock, and the legal title to said property taken in the name of said Lillie B. Maher upon the same trusts upon which said stock had before that time been transferred to her; that in the fall of 1886, with the consent of said Elizabeth Stevens, Ella L. Aldrich, Sybil Aldrich and Lillie B. Maher, the Lake avenue property was purchased for the sum of $13,800, with the advice and consent of William

S. King, and paid for by Lillie B. Maher out of the pro-
ceeds of said stock, and the legal title to said property
taken in the name of Lillie B. Maher; that said property
was held upon the same trusts upon which said stock
was held by Lillie B. Maher; that shortly prior to the
year 1890, with the knowledge and consent of Elizabeth
Stevens, Ella L. Aldrich and Lillie B. Maher, (Sybil Ald-
rich being then deceased,) the further sum of $8500, which
was a part of said trust fund of $30,000, was loaned by
William S. King upon the promissory note of Benjamin
Sumner, secured by mortgage upon the farm of said Sum-
ner located at Woodstock, Connecticut, said note being
for the sum of $9000, and including, besides the $8500
from said $30,000 fund, the further sum of $500 due from
Sumner to Elizabeth Stevens; that said note and mort-
gage were delivered to said Lillie B. Maher, and were
received and held by her upon the same trusts above
referred to; that subsequently, and in the year 1897, said
Lillie B. Maher, in violation of her duty as trustee and
without the consent of the other parties in interest, ex-
changed the Sumner note and mortgage for the equity of
redemption in the St. Botolph street property; that said
American Paper Barrel Company stock, said Oakwood
boulevard property, said Lake avenue property and said
Sumner note and mortgage were transferred to Lillie B.
Maher at her special instance and request, and upon her
verbal promise to hold said properties upon the trusts
alleged; that Elizabeth Stevens and Ella L. Aldrich are
the sisters of the deceased mother of Lillie B. Maher;
that Elizabeth Stevens brought up and educated Lillie B.
Maher from her infancy until she was grown to woman-
hood; that Sybil Aldrich was the mother of Elizabeth
Stevens and Ella Aldrich and the grandmother of Lillie
B. Maher; that from shortly after the transfer to Lillie
B. Maher of the American Paper Barrel Company stock,
in 1883, up to the time of the marriage of Lillie B. Maher,
in 1897, Elizabeth Stevens and Lillie B. Maher lived to-

gether; that during that time, with the exception of the time intervening between 1890 and 1892, Ella L. Aldrich resided with them; that Sybil Aldrich also resided with the complainants and said Lillie B. Maher from 1883 up to the time of her death, in 1887; that the parties resided at Worcester, Massachusetts, as a family, from the fall of 1883 until the spring of 1885, when they removed to Chicago and took up their residence in the Oakwood boulevard property, where they lived until 1890; that in 1890 the Oakwood boulevard property was leased for three years and the rent paid to Lillie B. Maher; that in the year 1893 the parties returned to the Oakwood boulevard property, where they resided until 1897; that in 1897 the Oakwood boulevard property was sold for $8000 and the proceeds received by Lillie B. Maher; that in 1893 the Lake avenue property was leased for ninety-nine years to Wallace L. DeWolf for $2000 per annum; that the rent therefrom has been paid to Lillie B. Maher; that prior to such leasing Lillie B. Maher received $2000 from one J. Frank Aldrich on a forfeited lease of the said property; that Lillie B. Maher received all the income from the Sumner note and mortgage and all the rents from the St. Botolph street property; that Lillie B. Maher paid the family expenses out of the various trust properties, or the income thereof, and paid Ella L. Aldrich an allowance, at one time of $15 a month and at a later period $50 a month; that from December, 1898, Lillie B. Maher repudiated the trusts and denied the rights of Ella L. Aldrich, and that shortly afterwards she repudiated the trusts as to Elizabeth Stevens. The bill prays that trusts be declared and established in the Lake avenue property and the St. Botolph street property and in the proceeds of the sale of the Oakwood boulevard property; that Lillie B. Maher be compelled to account for the rents, issues and profits of all of the various trust properties; that she be removed as a trustee and that a new trustee be appointed. The parties defendant to the bill

were Lillie B. Maher, Peter S. Maher, her husband, Wallace L. DeWolf, lessee of the Lake avenue property, Edward S. Hill and Charles L. Beale, trustees of the estate of Charles A. Smith, deceased, who claimed an interest in certain of the rentals of the Lake avenue property as assignee thereof under Lillie B. Maher.

Lillie B. Maher and Peter S. Maher filed a joint and several answer, in which they deny the allegations of the bill as to the alleged proposal of William S. King to transfer to Lillie B. Maher $30,000 worth of stock of the American Paper Barrel Company in trust for Elizabeth Stevens, Ella L. Aldrich, Sybil Aldrich and Lillie B. Maher, as averred in said bill; that William S. King ever made any such proposition; that William S. King ever transferred to Lillie B. Maher $30,000 worth of stock of said company, or any stock of said company or any other company, in trust or otherwise; that William S. King sold said stock and turned over the proceeds to Lillie B. Maher; that William S. King paid or turned over any sum of money whatever to Lillie B. Maher to be held by her upon any trust whatever; that the Oakwood boulevard property, the Lake avenue property or the Sumner note and mortgage were purchased out of the proceeds of the sale of stock or any trust fund, and aver that each of said properties was purchased by King with his own funds and not out of any funds held in trust, and that he caused said properties to be conveyed and transferred to said Lillie B. Maher as a free and voluntary gift to her, and not upon any trust whatever. They deny that said properties, or any of them, were placed in her name at her request, or that she ever promised to hold the same, or any of them, upon the trusts alleged in the bill or upon any other trust. They deny that the family expenses and allowance of Ella L. Aldrich were paid out of the proceeds of the sale of the $30,000 worth of stock of the American Paper Barrel Company or out of any trust fund whatever, and aver that William S. King voluntarily

paid to said Lillie B. Maher, from time to time, small amounts of money sufficient for her support and the expenses of said family, and that she voluntarily gave complainants and Sybil Aldrich a home and Ella L. Aldrich an allowance. The answer also avers that the alleged trusts are not evidenced in writing, signed by the said Lillie B. Maher, and sets up the Statute of Frauds. The answer likewise sets up the defense of *laches* and of the Statute of Limitations, and avers the want of necessary parties to the bill of complaint. It is admitted by the answer that the Lake avenue property was leased by Lillie B. Maher to Wallace L. DeWolf for ninety-nine years for $2000 a year, and that she has received the rents therefrom; that she leased the Oakwood boulevard property from the year 1890 to 1893 and received the rents; that she sold the property for $8000 in 1897 and received the proceeds; that she received the interest on the Sumner note and mortgage, and subsequently exchanged said note for the equity in the St. Botolph street property. Wallace L. DeWolf filed an answer setting up an assignment of the ninety-nine-year lease on the Lake avenue property to secure the payment of $1500. Hill and Beale disclaimed.

The decree entered by the court below sustained objections to the master's report, which recommended the dismissal of the bill for want of equity, found the facts substantially as alleged in the bill of complaint, granted the relief in the bill prayed, except that no removal of the trustee is decreed, and re-referred the cause to the master in chancery for an accounting. Lillie B. Maher and Peter S. Maher have sued out a writ of error from this court, and the errors relied on for a reversal of the decree are (1) that the decree is against a preponderance of the evidence; (2) that the court should have dismissed the bill of complaint for want of proper parties; (4) that the complainants are barred by reason of their *laches;* (5) that the complainants are barred by the Statute of

Limitations; (6) that the court erred in sustaining objections to the master's report; and (7) that the court should have dismissed the complainants' bill for want of equity.

Hamlin & Boyden, (Louis M. Greeley, of counsel,) for plaintiffs in error.

Parker H. Hoag, (Francis A. Riddle, of counsel,) for defendants in error.

Mr. Chief Justice Hand delivered the opinion of the court:

The evidence found in this record is voluminous and upon vital questions conflicting. It, however, appears from the testimony of all the witnesses who testified upon the subject, that the relationship of the parties as stated in the bill was correct, and that Elizabeth Stevens brought up Lillie B. Maher from her infancy and that she regarded Mrs. Stevens in the light of a mother, though she was never legally adopted; that in the summer of 1883 Elizabeth Stevens, Ella L. Aldrich, Sybil Aldrich and Lillie B. Maher were at the farm of Benjamin Sumner, near Woodstock, Connecticut, where Mrs. Stevens had served in the capacity of house-keeper for Mr. Sumner for many years and where Lillie B. Maher had spent the greater part of her life, and where Mrs. and Miss Aldrich were then visiting; that while there they met William S. King, of Minneapolis, Minnesota, a man of wealth who often visited at the Sumner farm and was then at the farm upon business with Mr. Sumner, who was then financially embarrassed; that the four women were without means of support, and that an arrangement was made at that time by William S. King with Lillie B. Maher, or with all of said women, whereby, in the fall of that year, Mrs. Stevens, her mother, her sister and Lillie B. Maher left the Sumner farm and removed to Worcester, Massachusetts, rented a house and lived together until the spring of 1885, their expenses

during that time being provided from funds furnished
by William S. King; that during the spring of 1885 the
Oakwood boulevard property was purchased and paid
for by Lillie B. Maher with funds received from King,
the deed thereto being made to Lillie B. Maher; that
the family on May 1 of that year moved to Chicago, took
possession of the Oakwood boulevard house and con-
tinued to reside there until May 1, 1890, at which place
Sybil Aldrich died, in the year 1887; that on May 1, 1890,
the Oakwood boulevard property was rented, and Eliza-
beth Stevens and Lillie B. Maher went east, Miss Ald-
rich remaining in Chicago, where she was preparing
herself for the profession of teacher at the Cook County
Normal School; that in the spring of 1892 she joined Mrs.
Stevens and Lillie B. Maher in New England; that in
the spring of 1893 the three women returned to Chicago
and took up their residence as a family in the Oakwood
boulevard property, where they resided until in May,
1897, when the property was sold, and Mrs. Stevens and
Lillie B. Maher went to Boston, where Lillie B. Maher
was shortly thereafter married; that Ella L. Aldrich re-
mained in Chicago; that in the fall of 1886 the Lake ave-
nue property was purchased for $13,800 and paid for by
Lillie B. Maher with money received from King, and the
title thereto was conveyed by the seller to Lillie B. Ma-
her; that in 1893 a ground lease was made thereon, un-
der the advice of William S. King, by Lillie B. Maher to
Wallace L. DeWolf for ninety-nine years, at the annual
rental of $2000; that prior thereto Lillie B. Maher had
received the sum of $2000 on the forfeiture of a lease of
that property from one J. Frank Aldrich; that in 1890
William S. King turned over to Lillie B. Maher the Sum-
ner note and mortgage for $8500; that Lillie B. Maher
received all rents from the Oakwood boulevard property
and the proceeds of the sale of that property, also all
the rents and forfeiture money from the Lake avenue
property, also the interest on the Sumner note and the

rents of the St. Botolph street property; that from the time the parties went to live in Worcester, in 1883, up to the time of the marriage of Lillie B. Maher, said women, and each of them, had no property or income other than such as was received, directly or indirectly, from William S. King, excepting a small amount earned by Ella L. Aldrich making corsets during their residence in Worcester; that during that time all expenses of the family, including the allowance to Ella L. Aldrich, were paid by Lillie B. Maher out of funds received by her, directly or indirectly, from William S. King,—that is, from money paid to her by him or from the rents and profits of the property which had been purchased and paid for by her with funds received from him.

The main controverted question of fact is as to what the arrangement was between William S. King and Lillie B. Maher and the other three of said women, by virtue of which Lillie B. Maher became possessed of the property the use of which during the lives of said women, or the survivor of them, is now in controversy. The evidence offered on behalf of the complainants tended to show that in the year 1883, and while the parties were all at the Sumner farm, William S. King created a trust for the support and maintenance of the complainants, their mother, Sybil Aldrich, and Lillie B. Maher, or the survivor of them, by the transfer to Lillie B. Maher, in trust, of $30,000 worth of stock of the American Paper Barrel Company; that King shortly afterwards sold said stock for $30,000; that the proceeds of the sale were turned over by him to Lillie B. Maher from time to time, and that by consent of all the parties in interest $8000 of the proceeds was invested in the Oakwood boulevard property and $13,800 in the Lake avenue property; that the title to these properties was taken in the name of Lillie B. Maher by the consent of all the parties, the reason for making the transfer to her being, that she was the youngest of the number and the best able to manage

the same; that she took title to said properties upon the
same trusts upon which the original trust was created,
that in the spring of 1890 King turned over to her the
balance of said $30,000 in the form of $8500 of the Sum-
ner note and mortgage, which she also held in trust; that
Lillie B. Maher recognized such trust until after the time
of her marriage by repeatedly admitting that she held
the income of all of said properties for the benefit of said
women, and in recognition of said trust used the income
from said properties as they became income-bearing, as
well as the interest upon the Sumner note and mortgage,
in defraying the family expenses and paying the allow-
ance to Miss Aldrich.   The testimony of the defendants
was to the effect that William S. King never owned any
stock in the American Paper Barrel Company; that he
never set aside or transferred to her any stock or moneys
or securities of any sort as a trust fund, upon the trusts
alleged or otherwise; that the stock of the American
Paper Barrel Company was absolutely worthless at all
times; that the moneys used by Lillie B. Maher previous
to 1890 for the family expenses was money that was
voluntarily given to her by King in small amounts, from
time to time, for the purpose of meeting her expenses,
and that she voluntarily and as a gift supported the com-
plainants, who were her aunts and were members of her
family, out of said moneys; that she voluntarily and as
a gift, subsequent to 1890, paid all family expenses out
of the issues and profits of the Oakwood boulevard and
Lake avenue properties and the Sumner note and mort-
gage; that she also paid the allowance made to Miss
Aldrich out of the same moneys; that the Oakwood bou-
levard and Lake avenue properties and the Sumner note
were each and all of them given to her by William S.
King as gifts, without any solicitation or request upon
her part and not upon any trust; that he paid the money
for these several properties and caused them to be trans-
ferred to her as gifts; that he paid for them out of his

own money, and not out of any trust fund, and that she never promised to hold said properties, or any of them, upon the said trusts or upon any trusts.

The testimony bearing upon the question as to whether or not the property transferred to Lillie B. Maher by William S. King was given to her by him absolutely or whether it was transferred to her in trust, the object of the trust being to create an income for the support of said women and the survivor of them, is confined almost entirely to the testimony of the complainants and that of Lillie B. Maher. As we view the matter, the testimony of Elizabeth Stevens and Ella L. Aldrich, standing alone and uncontradicted by that of Lillie B. Maher, is amply sufficient to establish that William S. King set aside a fund of $30,000, consisting of shares of stock of the American Paper Barrel Company, or $30,000 in cash in lieu thereof, the earnings of which were to be used to support said women during their lives or during the life of the survivor of them, and it cannot be controverted that trusts in personal property of the character mentioned may be established by parol evidence, if the evidence to establish the trust is clear and convincing. The testimony of the complainants is corroborated by that of a number of witnesses who met and conversed with Lillie B. Maher at their respective homes and at her home in Chicago, with reference to the manner in which she held said property. Nellie Whitcombe testified she knew Mrs. Stevens and Lillie B. Maher. She said: "I first met them in my own home in 1885. Mrs. Stevens and Miss Stevens were present. They told us of acquiring property through W. S. King, and told us the property was the result of stock of the barrel factory; that he had given them the stock in this paper barrel factory; that they were to have the income. Mrs. Maher said the property was for her mother, her grandmother, the aunt and herself." Grace B. Foster, Isabel N. Adams, Rebecca Adams and Winnie H. Wiles testified to admissions of Lillie B. Maher of a

similar character. These witnesses appear to be entirely reputable and not unfriendly to either of the parties. Shortly after the marriage of Lillie B. Maher, in reply to a letter written by Ella L. Aldrich to her demanding that she account to her for her interest in said trust fund, Miss Aldrich received a letter bearing date October 6, 1898, from Lillie B. Maher, which is as follows: "Your letter of September 24 was received. In answer will say, you will have $50 (fifty) a month ($600 per year) as you have been having and as intended you should have as long as you needed it, and it can be paid to you direct once a quarter, but cannot be given to you outright, as none of it is given to *anyone* outright."

From a careful consideration of this evidence, in connection with the evidence of the complainants, we are unable to say that the chancellor erred in holding that the trust had been established, and that Lillie B. Maher held the income of said properties in trust for the joint benefit of Sybil Aldrich, Elizabeth Stevens, Ella L. Aldrich and herself during their natural lives and during the life of the survivor of them.

There is evidence in the record tending to show that William S. King was never a stockholder in the American Paper Barrel Company and that the stock of said company had no market value. If it be conceded that this testimony is in part true, we do not think these facts a bar to the right of recovery in this case. It must be conceded that William S. King was largely interested in the American Paper Barrel Company; that he spent large sums of money in attempting to perfect the manufacture of flour barrels from paper, and that he and others believed in the ultimate success of the company. If he set aside, or agreed to set aside, for the benefit of said women the income from $30,000 worth of that stock, and the stock afterwards proved to be worthless and he substituted in the place of the stock $30,000 in cash, which he delivered in lieu of the stock to Lillie B. Maher upon

the same trust upon which the stock was to be held, it would seem clear that after she had received the cash she ought not to be permitted to repudiate the trust and hold the property purchased therewith freed from the trust by reason of the fact, alone, that the $30,000, which was ultimately invested by her in the property which she now holds, was not money received from the sale of the stock, but was cash substituted by the donor in lieu of said stock. A perusal of this record must convince, we think, any fair mind that Elizabeth Stevens and Lillie B. Maher, in company with Sybil Aldrich and Ella L. Aldrich, would not have left the Sumner farm, where they had made their home for sixteen years, without any property or means of support, and set up an independent establishment at Worcester, unless there was a definite understanding with William S. King that their future support was provided for. The fact that William S. King did talk with said women about setting aside for their support certain interests in said American Paper Barrel Company cannot be questioned. It is also admitted that from the time said four women left the Sumner farm they were provided for by William S. King, and that he did ultimately make an investment, in the name of Lillie B. Maher, of about $30,000, the income of which was used for their maintenance and support by Lillie B. Maher down to shortly after her marriage. These admitted facts, in our opinion, afford strong presumptive evidence that the title to said property is held by Lillie B. Maher in pursuance of the original arrangement made between William S. King and said women in the summer of 1883, at the Sumner farm. While there is no direct proof that William S. King substituted $30,000 in cash in lieu of the stock, which appears to have proven worthless, we think said substitution can be legitimately inferred from the fact that after he had agreed to set aside the stock and it had proven worthless, he, without notifying the complainants that the stock was without value, invested a

like amount through the trustee who had originally been selected to administer the trust, and that said trustee recognized the original trust and executed the same for a period of fifteen years in a manner satisfactory to all parties interested therein.

The bill is framed upon the theory that a parol trust in personal property was created, and the property thus set aside was invested by the trustee in the property the income of which is now sought to be reached, and that the original trust thereby became impressed upon the property now held by the trustee, and this contention having been sustained, the Statute of Frauds does not apply, for the reason, as has been already suggested, that a verbal trust in personal property may be created by parol, (*Price* v. *Laing*, 152 Ill. 380,) and when such trust is established it is well settled the beneficiaries of such fund may follow the fund into all forms of investment which it may assume. *Breit* v. *Yeaton*, 101 Ill. 242.

The trust here was not disavowed by the trustee until subsequent to the year 1897, and as the bill was filed in 1899, the Statute of Limitations will not bar a recovery, as that statute never begins to run so as to bar the recovery of a trust fund until subsequent to the disavowment of the trust by the trustee. *Albretch* v. *Wolf*, 58 Ill. 186; *Hancock* v. *Harper*, 86 id. 445.

The trust having been recognized by the trustee and executed in a manner satisfactory to both trustee and *cestuis que trust* until a few months prior to the time of the filing of the bill herein, there was no occasion to file a bill to enforce the same at an earlier date, and the complainants are not barred by reason of their delay in commencing suit, as *laches* is imputable only where there has been gross negligence or great delay in asserting a right.

The question sought to be litigated here is the ownership of the rents and profits arising from said trust properties now held by Lillie B. Maher; and William S.

King, (or, he being deceased, his heirs and personal representatives,) was not a necessary party, as no relief was demanded of him or the heirs. *Grafton Dolomite Stone Co. v. St. Louis, Chicago and St. Paul Railway Co.* 199 Ill. 458.

The important question in this case is one of fact, and we are of the opinion that the evidence found in this record fully justifies the findings of the chancellor that Lillie B. Maher held the income produced by the fund received by her from William S. King in trust, in its present form of investment, for the benefit of the complainants and herself, and that she should account to the complainants for their share of such income. The question arises, however, from what date should the account be had? The decree does not fix such date, but simply re-refers the case to the master for the purpose of an accounting. It clearly appears that for many years plaintiff in error Mrs. Maher administered the trust in a manner satisfactory to both the complainants, and it is reasonable to infer from the evidence in this record that the income from this trust fund, whether received in the form of rent or interest, was used for the joint benefit of the complainants and the defendants, and while, perhaps, not used for their benefit in equal proportions, it was used in such manner that all were satisfied with its disbursement. At least no complaints are made by any one of the parties to this suit until September 24, 1898, the date of the letter of Miss Aldrich to Mrs. Maher. That letter appears to have been the first complaint that was made by Miss Aldrich, or anyone else, as to the manner in which the income arising from said trust fund was being applied by Mrs. Maher. We are therefore of the opinion that date should be taken as the date from which Mrs. Maher should be required to account for the rents and interest derived by her from said trust fund, whether held by her in money, securities, or invested in real estate.

The decree of the circuit court will be affirmed.

*Decree affirmed.*