Ella L. Aldrich, Defendant in Error, v. Lillie B. Maher, Plaintiff in Error.

## Gen. No. 14,768.

1. ACCOUNTING—*when exclusion of account erroneous.* An account stated by a party cannot be disregarded *in toto* merely because the items set forth are not as to each and every of such items supported by vouchers.

2. DECREES—*when scope cannot be enlarged.* If a decree has been affirmed by the Supreme Court it fixes the rights and interests of the parties to the controversy and unless conditions occurring since that decree inject new matter, not then known, or which did not then exist, there can be no departure from it.

3. CONTEMPT—*when error to adjudge party in, for failure to attend as witness.* It is error to adjudge a party in contempt for failing to appear as a witness before a master and submit to a *viva voce* examination touching an account rendered in a cause, where such party is a non-resident. No statute of this state gives the courts of this state any authority to compel a non-resident to come personally within the jurisdiction of this state for examination as a

witness nor to punish such non-resident as for contempt of court for failure to personally appear.

4. INTEREST—*when allowance proper against trustee de son tort.* Interest is properly chargeable upon the *corpus* of a trust in an action against a trustee who has been held to have dissipated the estate.

5. PLEADING—*when supplemental bill improperly filed.* It is error to allow the filing of a supplemental bill in an action in which the rights and interests of the parties have been finally adjudicated by the Supreme Court.

6. COSTS—*what not taxable.* Solicitor's fees under no circumstances, aside from the agreement of the parties, can be allowed or taxed as costs.

7. COSTS—*what not taxable.* The traveling expenses of solicitors incurred while journeying to a point outside of the state for the purpose of examining the adverse party, are not taxable as costs.

8. COSTS—*when master's fees should not be taxed.* Master's fees upon a reference made upon an issue which was wholly unauthorized should not be taxed against the defeated party.

Bill in chancery. Error to the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded. Opinion filed March 31, 1910. Rehearing denied April 10, 1910.

HAMLIN & BOYDEN and LOUIS M. GREELEY, for plaintiff in error.

ARBA N. WATERMAN, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The original decree in this cause was before the Supreme Court in Maher v. Aldrich, 205 Ill. 242, to the opinion in which case we refer for all matters involved in the cause antecedent to that landmark in this case. The opinion of the Supreme Court settled the trust question in dispute between the parties and sent the cause back to the trial court for an accounting, to commence with September 24, 1898. The court concludes its opinion with the following direction: "We are therefore of the opinion that date"—September 24, 1898—"should be taken as the date from which Mrs. Maher should be required to account for

Aldrich v. Maher, 153 Ill. App. 413.

the rents and interest derived by her from said trust fund whether held by her in money, securities or invested in real estate.''

- The record is somewhat voluminous and cannot, and indeed need not, be here recited. The arguments are lengthy, discussing many matters which are *res adjudicata* under the decision of the Supreme Court and not now subject to challenge by the parties or to interference by this court. What formed the *corpus* of the trust estate was settled by the former decree and its affirmance by the court of *dernier ressort* establishes it so firmly that no power short of that court on any further review, if any should be had before it, can in the slightest degree disturb it. The trial court proceeded upon the assumption that it was a fixed fact that the *corpus* of the estate chargeable to Lillie B. Maher as trustee was the Lake avenue property, $8,000 proceeds of the sale of the Oakwood Boulevard property, $2,000 forfeited by J. Frank Aldrich under an option for a lease of the Lake avenue property, and $8,500 of the $9,000 loan on the Sumner note, which was exchanged for the St. Botolph street, Boston, property, and lost by Mrs. Maher under a mortgage given thereon by her to secure a loan of $4,000. The only part of the trust property remaining in kind is the Lake avenue property and a charge against Mrs. Maher for the residue, found by the Master to be $18,500. To the proceedings subsequent to the affirmance by the Supreme Court of the original decree is our review of the record confined. This court has concluded that the decree must be reversed for the reason that the accounting made by Mrs. Maher was excluded; that she was erroneously adjudged to be in contempt of court; that the supplemental bill has no place in the record; that the appointment of the new trustee to supplant Mrs. Maher in virtue of the supplemental bill was unwarranted; and that $6,500 for complainant's solicitor's fees ordered to be paid by Mrs. Maher, as well as the Master's fees

taxed against her on a reference to ascertain the amount to be allowed, was contrary to law.

That the accounting of Mrs. Maher was entirely excluded is too plain to need discussion to demonstrate, notwithstanding the recitation in the fourteenth paragraph of the decree that Mrs. Maher's account and the deposition of herself, her husband and McCafferty were considered by the Master in stating the account. They were not considered. That they should have been considered defendants in error seemingly admit by the subtle endeavor made to avoid the inequitable and wrongful exclusion of the accounts and the depositions of Mrs. Maher and her witnesses. The findings of the master bear strong integral evidence that all of the foregoing evidence was excluded and intentionally so, after due deliberation. On May 24, 1904, the chancellor among other things ordered the master to disregard all of the papers and documents filed with him "in the name and nature of the account ordered and directed by the decree of the court to be made by her, the said Lillie B. Maher," and in obedience to this order the master did disregard all of Mrs. Maher's accounts and the depositions supporting them. If he had not done so he could not have reached the conclusions he did. This fact is further emphasized by the finding of the first clause of the decree, from the legal consequences of which it is idle to attempt to escape. This is the clause: "First. That the said Lillie B. Maher as trustee has failed, neglected and refused to file any account as such trustee or otherwise, pursuant to the decree of this court and in compliance with the law and practice in such a case and in compliance with the order entered in this cause." An examination of the accounts justified no such conclusion. The master ruled (and the chancellor sanctioned such ruling in the decree entered) that Mrs. Maher must state an account, together with vouchers supporting each of its items, before the same could be considered. We think this

ruling inequitable and uncalled for in the light of the former relationship of the interested parties, and that the account was in the first instance sufficient to permit defendants in error to surcharge and falsify it as to any item, but that there was no authority for disregarding it *in toto.*    It follows, therefore, that the conclusions of the master being based upon false premises are erroneous.    The Sumner note and mortgage were merged in the St. Botolph street property, so that the latter came under the ruling of the Supreme Court and formed a part of the trust property in the place of the Sumner investment.    The master should, therefore, have proceeded to ascertain the value of the St. Botolph street property as of September 24, 1898, and to have charged Mrs. Maher with the income received by her from that date until its sale under a mortgage given by her to C. G. Way, after crediting her with all proper disbursements chargeable to its maintenance, and thereafter charging her with interest on its ascertained value.    Such action would have been in accord with the original bill as amended before the entry of the decree reviewed by the Supreme Court.    There can be no enlargement of the scope of the case as fixed by the decree affirmed by the Supreme Court.    That decree fixed the rights of the parties and unless conditions occurring since that decree inject new matter, not then known, or which did not then exist, there can be no departure from it.

Mrs. Maher should not have been adjudged in contempt of court because of her failure to conform to an order to appear before the master at his office in Chicago for examination.    Mrs. Maher for several years prior to and at the time of the commencement of this suit resided with her husband in Boston. Before she had given testimony at Boston in this case, where counsel for defendants in error attended and cross-examined, their travelling expenses being allowed by the court and taxed as costs against Mrs. Maher, she was ruled to attend before the master for

*viva voce* examination touching her accounts rendered
in the cause. She failed to attend, claiming ill health
prevented. The chancellor ordered Mrs. Maher to
appear before the master in accord with a rule of the
Circuit Court, which *inter alia* provided, "All parties
accounting before a master shall bring in their re-
spective accounts in the form of debtor and creditor,
and any of the other parties who shall not be satisfied
with the accounts so brought in shall be at liberty to
examine the accounting party *viva voce,* or upon oral
or written interrogatories, in the master's office, as
the master may direct." This rule did not require
the master to compel an accounting party to appear in
his office for *viva voce* examination, and if it did, it
did not operate to repeal the statute on evidence and
depositions, which provides how a nonresident wit-
ness may be examined. No statute of this state,
known to us, gives the courts of this state any au-
thority to compel a nonresident to come personally
within the jurisdiction of this state for examination
as a witness, nor to punish such nonresident as for
contempt of court for failure to personally appear.
The Evidence and Deposition Statute provides the
appropriate method of taking the testimony of non-
residents, be they parties or witnesses. For failure
to comply with this illegal order, Mrs. Maher was in
effect outlawed. She was adjudged in contempt, her
accounts and depositions rejected and she was ad-
judged to owe money for which she was not liable.
Such proceeding was unconscionable and would not
be tolerated even by the strict rules of the common
law, much less by the course of procedure in a court
of conscience. The decree by the ninth clause specifi-
cally finds that Mrs. Maher and her husband are non-
residents of this state. This fact was notice to the
court and all concerned that Mrs. Maher could not be
brought within this jurisdiction against her will for
any civil purpose. If her evidence was needed for any
purpose, recourse could have been had, as in one in-

stance, by procuring the same by deposition. It does seem to us the contempt proceeding was uncalled for and oppressive, because when the opportunity presented itself for Mrs. Maher's examination in Boston counsel did not avail of it, but contended themselves with a very limited examination. There is nothing in this record from which any inference may be indulged that Mrs. Maher was unwilling to answer any question which any of the parties might see fit to put to her at any time. The decree affirmed by the Supreme Court found that the $2,000 forfeit money paid by J. Frank Aldrich to Mrs. Maher was a part of the *corpus* of the trust estate. She is therefore chargeable with interest thereon from September 24, 1898. Mrs. Maher is entitled to credit for all disbursements made to, for, or on account of defendants in error since September 24, 1898, including the furniture, valued at $1,500, sent by Mrs. Maher to Mrs. Stevens December 30, 1898.

The supplemental bill was improperly allowed to be filed. No new matter occurring since the filing of the original bill and not within the knowledge of the parties or accessible to them at the time of its filing was alleged in the supplemental bill. The dissipation of the trust property by Mrs. Maher appears from the bill as first filed, as also her repudiation of the trust and contention that the property claimed was her own. The reversionary right of King, if alive, or, if dead, of his personal representatives, in the property, was known to complainants at the time they instituted this proceeding, or at least such knowledge is imputable to them from the averments of their original bill, so that making the devisee of King, who created the trust, a party, did not constitute a new element of the case arising since the filing of the original bill. If complainants were entitled to the additional relief sought by the supplemental bill at the time these proceedings were commenced, then they lost that right by not claiming it before taking the decree originally

entered adjudicating their rights. As said in Hood v. Green, 42 Ill. App. 664: "No reason is given in the supplemental bill why the facts relied upon to sustain it were not put in the original bill by amendment." The rule is as stated in Story's Eq. Pl. sec. 422: "If, therefore, the party proceeds to a decree, after a discovery of the facts upon which the new claim is founded, he will not be permitted afterward to file a supplemental bill, in the nature of a bill of review founded on these facts, for it was his own *laches* not to have brought them forward at an earlier stage of the cause." The affirmed decree settled the rights of the parties, and that decree cannot be enlarged by adding thereto any additional right existing at the entry of the former decree. Neither can a decree be amended after the term at which it was entered. Adam v. Gill, 158 Ill. 190. The so-called supplemental bill is not by its averment of fact such a pleading; if anything, it would be an amendment to the original bill, because its averments are as to facts existing at the time the original bill was filed. The following statement from Bauer v. Zelle, 172 Ill. 407, is in point: "The allegation of this additional pleading related to matters which occurred prior to the institution of the suit, and therefore the pleading denominated a supplemental bill was but an amended bill, and the rules of pleading applicable to it are to be determined, not by the mere name given to it by the pleader, but by its real nature as disclosed by its allegations. Burke v. Smith, 15 Ill. 158." The removal of Mrs. Maher as trustee and the appointment of the Royal Trust Company in her place as trustee, and the impounding of her interest in the Lake avenue property being grounded on the allegations of the so-called supplemental bill and not within the terms of the affirmed decree, are without warrant of law and erroneous. As Miss Aldrich's, as well as Mrs. Maher's share in the income of the trust estate was increased from one-third to one-half by the death of Mrs. Stevens, the

realignment of interest was within the scope of the original bill and the affirmed decree, and therefore permissible. The death of Mrs. Stevens was an event which occurred after the entry of the affirmed decree, and might have been made to appear by averment in a supplemental bill supported by proof, if deemed necessary.

The taxing of costs in this state is regulated and controlled by statute. Solicitor's fees under no circumstances, aside from the agreement of the parties, can be allowed or taxed as costs in the cause. Wilson v. Clayburgh, 215 Ill. 506. They are not taxable against a party to the cause. The extreme, on this proposition, to which the courts of this state have gone, is the allowance of solicitor's and attorney's fees out of trust funds, where such funds have been the object of protection through litigation eventuating in the decree for judgment in the cause. The decisions of courts outside of this jurisdiction have no weight in determining this question. The rule as to costs is controlled by the statutes of the several states and varies in each. Counsel for defendants in error have cited three Illinois cases. They are Waterman v. Alden, 144 Ill. 90; Abend v. Endowment Fund, 174 *ib.* 96; and Lewis v. Sedgwick, 223 *ib.* 213. In the Waterman case no solicitor's fees of an adversary party are charged against or ordered to be paid by the defeated trustees out of their own pockets. Certain costs, such as are usually taxable are ordered paid out of certain funds, which also embraced amounts covered by the stipulation of the parties. In the Abend case certain solicitor's fees were directed to be paid out of the funds involved in the litigation, and the court say: ''A trust may be lawfully required to bear the necessary expenses of its own preservation. The claim to this fund set up and pressed by appellant made the services of solicitors necessary to a preservation of any part of it to its proper use, and the allowance of reasonable solicitor's fees to be paid out of the fund, under such circumstances, is neither

error nor a diversion of the fund.'' In the Lewis case the allowance of $500 for solicitor's fees was ordered to be paid by the executor as such, and of course such amount was payable from the estate of the testator. The will, attacked by the widow, who had renounced the provisions made in it for her, was sustained. The executor was in no wise derelict in his duty, so that what he was ordered to pay as solicitor's fees was payable out of the estate. This was not a case of adversary solicitor's fees. The order that Mrs. Maher pay $6,500 adversary solicitor's fees being erroneous, the master's fees on a reference to ascertain the amount of such fees cannot be taxed against her. Neither are we aware of any authority making Mrs. Maher liable to pay the travelling expenses of defendants in error's solicitors, in journeying to Boston to attend on the examination of Mrs. Maher or her witnesses. That allowance must also be excluded as a charge against Mrs. Maher.

The decree of the Circuit Court appealed from is reversed and the cause remanded for such further proceedings conformable to the views expressed in this opinion, and whatever accounting may be had shall be upon the lines above indicated.

*Reversed and remanded.*