(No. 16161.—Reversed and remanded.)

ETHEL C. CODDINGTON *et al.* Plaintiffs in Error, *vs.* FRANK S. BEVAN, Exr., *et al.* Defendants in Error.

*Opinion filed December 16, 1924.*

1. TRUSTS—*a trust in personal property may be created and proved by parol.*   A trust in personal property may be created by parol and proved by parol testimony, including the admissions of the trustee, and when such trust is established the beneficiaries of the fund may follow it to all forms of investment it may assume.

2. SAME—*what shows creation of parol trust in personal property.*   Evidence that a mother some time prior to her death intestate expressed her desire that her husband have the use of her money, amounting to $10,000, during his lifetime, after which it should become the property of their only son, and that the father and the son after her death divided the money, each investing $5000 in his own name, no administration being had, is sufficient to establish a parol trust in the fund invested by the father, and said fund will not pass by the father's will but will become a part of the estate of the son, who predeceased his father.

HEARD, J., took no part.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Logan county; the Hon. FRANK LINDLEY, Judge, presiding.

HAROLD F. TRAPP, guardian *ad litem.*

SCHOLES & PRATT, and MILLER & MILLER, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court for review upon a writ of *certiorari* to the Appellate Court for the Third District, which court affirmed a decree of the circuit court of Logan county dismissing for want of equity the bill of complaint filed by plaintiffs in error.

The material facts developed upon the hearing were not contradicted and were as follows: Charlotte A. Coddington, who was most generally called Lottie Coddington, was the wife of Louis Coddington. Cleveland (or Cleve) Coddington was their only child. About 1915 Mrs. Coddington received from her father's estate the sum of $10,000, which amount she deposited March 2, 1917, in the People's Bank of Atlanta, Illinois, taking therefor a demand certificate payable to herself, with interest thereon at three per cent if held for six months or one year. At some time after receiving her share of her father's estate, no definite date having been established, plaintiffs in error contend Mrs. Coddington called her husband and their only child to her room for the purpose of discussing with them the disposition of her money. She requested that after her death her husband have the use of her money during his life and after his death it was to be the property of her son. This arrangement was consented to by the father and son. Mrs. Coddington died intestate on March 21, 1918, leaving surviving her husband and son. The son was of age and no administration was had upon her estate. On May 9, 1918, not quite two months after the mother's death, the father and son went to the People's Bank of Atlanta and presented the mother's demand certificate for $10,000, upon which each of them endorsed his name. Through the same bank

the father and son each made separate application and subscribed for $5000 worth of United States third liberty loan bonds in denomination of $1000 each, to be registered in their respective individual names. The principal of the demand certificate for $10,000 was used in the purchase of these bonds. The accrued interest on the demand certificate, in amount of $355.83, was paid by the bank to Louis Coddington and placed to his credit. The father and son also on the same date presented and endorsed a second certificate previously issued by the same bank to Mrs. Coddington in amount of $400, and this sum was also placed to the father's credit in the bank. Both amounts were afterward checked out and used by the father. The registered bonds purchased were later received by the bank and $5000 worth were delivered to each the father and son. The bonds registered in the father's name were found in his safety deposit box upon his death. Later, in 1919, the father bought and had registered in his own name two fourth liberty loan bonds in amount of $1000 each. Soon after his wife's death Louis Coddington made his home with his son, except during the winter periods, which he spent in California. While he was in California during the winter of 1919-20 he received word of the son's illness, and while *en route* to Cleve's home the son died, about February 13, 1920. He left surviving him his wife, a small son and daughter, and a third child was born after Cleve's demise, all of whom are plaintiffs in error here. His wife was appointed administratrix of Cleve's estate, and in her inventory of assets the $5000 worth of bonds registered in the name of Louis Coddington were not included. Cleve's father made a will November 2, 1920, which was about nine months after his son's death, wherein it was provided, "whatever United States liberty bonds I own at my death I bequeath to my nephews," (naming them,) and on October 3, 1921, he died. His will was probated, and the $5000 worth of third liberty loan bonds were inventoried as a part of the assets of his estate.

It is admitted by the parties that at the death of Lottie Coddington intestate, in the latter part of March, 1918, she owned the demand certificate for $10,000, with accrued interest thereon. She also owned the additional $400 certificate and whatever accrued interest may have been due. The $10,000 certificate, with its accrued interest, and the additional certificate of $400, made an approximate money estate of $10,800 on May 9, 1918, which was the date Louis Coddington and Cleve Coddington met at the People's Bank and arranged the division of money from Mrs. Coddington's estate. In the absence of any agreement between the father and son, under the statute the latter would have been entitled to two-thirds of his mother's money, or approximately $7200, and his father entitled to one-third, or about $3600. What was done at the bank resulted in the father obtaining for his own property the accrued interest on the mother's $10,000 certificate and the principal of the second $400 certificate. Hence it will be seen the father received as a result of the meeting with his son at the bank on that day the value of approximately $5800, or more than half of Mrs. Coddington's money, while the son received $5000 worth of third liberty loan bonds, which is less than one-half of his mother's estate. The banker who handled the transaction gave no testimony as to any conversation or agreement between the father and son at the bank on the day the mother's money was received by them.

A. L. Dawes and wife were old-time intimate friends of the Coddingtons. They spent their winters in California, as did also Louis Coddington after his wife's death. In the winter of 1919 Coddington was an almost daily visitor of Dawes and wife at their apartment at Long Beach. Dawes testified that in December, 1919, at his apartment, Coddington in a conversation said Mrs. Coddington (how long prior to her death is not stated, but it was after she had come into possession of her money,) called Cleve into her room and asked him if he had any objection to her turn-

ing the money over to his father for his life. Cleve gave
his consent and approval, and his mother said, "You know
you will get it all anyhow, for you are the only child." In
the same conversation Coddington said that to encourage
Cleve he had bought $5000 of bonds in Cleve's name. Mrs.
Dawes was present and heard the conversation. She testi-
fied Coddington said his wife told him he might have the
use of her money during his lifetime; that he bought bonds
with it, and Cleve said he was satisfied for his father to
have $5000, himself $5000, and that at the death of Cod-
dington all the money was to go to Cleve; that it was to
be Cleve's at his father's death.

Plaintiffs in error contend that what Louis Coddington
and his son did at the bank May 9, 1918, created a trust
fund of the $5000 Louis Coddington received, which he, as
trustee, was to hold and have the proceeds of during his
life and at his death the *corpus* belonged to the son. It is
not claimed that what Mrs. Coddington said to her husband
and son when she called them into her room, and what they
said, created a trust in the husband, but it is argued that
that conversation showed what Mrs. Coddington wanted to
do with the $10,000, the consent of her husband and son
to do as she desired, and was the basis which caused the
parties themselves to create a valid trust after her death.
Defendants in error contend the evidence is not sufficient
to establish the trust.

A trust in personal property may be created and proved
by parol, and when such trust is established it is well set-
tled the beneficiaries of such fund may follow the fund into
all forms of investment which it may assume. (*Maher* v.
*Aldrich,* 205 Ill. 242.) A trust in personal property may
be proven by the admission of the trustee or other parol
evidence. (*People* v. *Schaefer,* 266 Ill. 334.) The rule
that a trust in personal property may be created by parol
and proved by parol testimony is not disputed by counsel
for defendants in error.

The failure to inventory the $5000 worth of bonds here involved, as part of the assets of the estate of Cleve Coddington, was explained by his wife, who was the administratrix of his estate. · She testified it was her understanding when Cleve's mother died his father and Cleve took $5000 each, and at the time of his father's death Cleve was to get the entire $10,000, or the bonds bought with the money; that she had confidence in Cleve's father and believed she and Cleve's children would get the $5000 at the death of Louis Coddington, and for that reason she did not put it in the inventory.

If the merits of this case depended solely upon what transpired in Mrs. Coddington's bed-room when she talked to her husband and son about the disposition of her money it would not establish a trust in Louis Coddington for the benefit of his son. In our view, a valid trust was created by the action and agreement of the father and son on May 9, 1918. The testimony of Mr. and Mrs. Dawes as to what Louis Coddington said at their house in December, 1919, shows that Mrs. Coddingon during her lifetime told her husband and son she wanted, if they consented, that her husband should have the use of her money during his life and at his death the son should receive it. If that was all that had occurred it would not create a trust and the money of Mrs. Coddington would have been distributed between her husband and son under the statute. Doubtless for the purpose of carrying out the wishes of the deceased wife and mother the father and son met at the bank and entered into the agreement which resulted in the $5000 bonds being registered in Louis Coddington's name. The disposition made of the money by the father and son was not exactly in accordance with what Mrs. Coddington told them she desired. If her desire had been strictly carried out Louis Coddington would have received the use of the entire $10,800 on deposit in the bank. Instead of that he received $800 as his absolute property and the use of $5000 invested in

315—7

government bonds. With his consent the son received $5000 for his own absolute property, which he invested in government bonds. Dawes testified he did that to encourage his son. The son at the same time relinquished to his father any present or future interest in the $800. The only reasonable understanding of the statements made by Louis Coddington to Mr. and Mrs. Dawes is, that he was to have the use of the $5000 invested in his name in government bonds and that he held the *corpus* of the fund for the benefit of his son, who should come into possession and use of it at the father's death. No law prevented the son from consenting that his father might have possession and use of his money during the father's life. Both father and son knew that was the wish of the wife and mother. They agreed the father should take $800 absolutely and $5000 in trust, and the father said his reason for taking only that amount in trust was that he wanted to encourage the son by letting him have $5000. The authorities above cited, and many others, permit a valid trust in personal property to be created by parol and to be proved by the admission of the trustee. The proof here meets all the requirements essential to sustain a trust in the $5000 bonds in the name of Louis Coddington. The bonds which passed to the nephews of Louis Coddington under his will were bonds which he owned absolutely, and not bonds purchased with money which he held in trust for his son.

The circuit court erred in dismissing the bill and the Appellate Court erred in affirming the decree. The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court, with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*

Mr. Justice Heard took no part in this decision.